34 C.C.P.A. (Patents)

**Application of MILLER.**

**Patent Appeal No. 5179.**

Court of Customs and Patent Appeals.
June 27, 1946.

Rehearing Denied Sept. 30, 1946.

Toulmin & Toulmin, of Dayton, Ohio (John M. Mason, H. A. Toulmin, Jr., Rowan A. Greer, and H. H. Brown, all of Dayton, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D.C. (E. L. Reynolds, of Washington, D.C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

Appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office affirming the

action of the Primary Examiner in rejecting claims 19, 26, 27, 29 to 35, inclusive, 41, 42, and 53 in his application for a patent on "Continuous Wire and Strip Electroprocessing Machine." Four claims were allowed.

Many other claims were submitted and acted upon by the examiner and the board but a number of them were withdrawn before the board which makes unnecessary the consideration of a number of references which we do not list here. The references which we are called upon to consider and which were considered by the tribunals below are as follows:

| | | |
|---|---|---|
| Cowper-Coles (Br.) | 21,081 | 1906 |
| Cowper-Coles | 1,515,092 | Nov. 11, 1924 |
| Brockway | 1,803,691 | May 5, 1931 |

Claims 19 and 29 are regarded as illustrative of the appealed subject matter and were so regarded by the board. They read:

"19. In an apparatus for continuously electroplating multiple metal strands, the combination with a plurality of throughs containing chemical treating solutions arranged in succession and coacting together to chemically clean and electroplate said metal lengths and means for continuously moving said metal strands therethrough at different speeds, of an electroplating tank arranged for holding a metal bearing electrolyte in contact with said metal strands, anodes disposed therein, cathode contact fingers for engaging said metal strands, said fingers, metal strands and anodes being mutually adjustable so that the distance between the metal strands and the anodes can be adjusted as the anodes wear away to maintain the resistance between the anode and cathode electrodes uniform."

"29. An electrical contact member for providing electrical connection to a continuously moving strip while said member and strip are submerged in electrolyte, comprising an insulated finger member having a jaw at one end, means for pivotally supporting said finger, a conducting member within said finger having one end exposed in the base of said jaw, means associated therewith comprising a reciprocable sleeve on said conducting member for positioning said continuously moving strip within the jaw of said finger, and means for yielding-ly pressing said finger in contact with said moving strip."

The invention is described by the examiner as follows:

"The subject matter of the appealed claims relates to an apparatus for electroprocessing metal involving electrochemically cleaning and electrochemically galvanizing continuously moving wires, strip, or tubing. The galvanizing apparatus comprises a tank for holding electrolyte, grooved ducking rolls at the ends of the tank, cathodic contact fingers along the tank intermediate the rolls, dams submerged in the electrolyte for controlling the flow of electrolyte, and horizontally disposed anode rods positioned underneath and close to the traveling wire, strip or tubing. In order to independently move each of a multiple of parallel wires through the tank, the ducking rolls comprise a plurality of parallel, independently moved, grooved rolls at each station, each individual roll being made up of peripheral flanges telescoping with the flanges of adjacent rolls so as to vary the width of the groove, thus accom-[m]odating wires of varying thicknesses. The contact fingers at each station are also arranged as a plurality of parallel fingers pivoted about a common supporting rod. Each contact finger comprises an L-shaped member pivoted about this supported rod, one leg of the L being of conducting material and being cathodically connected to a supply wire near the pivot point, and contacting the moving wire at the end away from the pivot, and the other leg carrying a weight the position of which can be adjusted. An insulating sleeve surrounds the first leg, said sleeve being grooved at the end away from the pivot so that the groove straddles the traveling wire.

"A recirculating system for the electrolyte in the above tank comprises a cooling tower and a filter."

The appealed claims may be divided into two main groups, one of which covers the feature of adjustments between the cathode, the wire and the anode, and the other is directed to the insulating of the cathode fingers. The first reference relied upon in rejecting both groups of claims is the U. S. patent to Cowper-Coles.

The board in its decision followed the reasoning of the examiner and in part said:

"Claim 19 is drawn to cover the mutual adjustment between the cathode contact fingers, the metal strands being electroplated and the anodes, whereby the distance between the strands and the anodes can be adjusted to maintain the resistance between the anodes and cathode fingers uniform as the anodes wear away. The Examiner rejected this claim as being unpatentable over the U. S. Patent to Cowper-Coles in view of the British patent to the same patentee. The latter shows the idea of mutually adjusting anode and cathode, but not in an apparatus in which the cathodes are 'fingers'. This expedient is shown, however, in the U. S. patent to Cowper-Coles which also shows that there is nothing new in using such fingers where metal strands are electroplated. In view of this art, we see nothing patentable in the concept expressed in this claim. Claim 35 is drawn to similar subject matter and is likewise considered properly rejected.

\* \* \* \* \* \*

"Claims 26, 27, 29, 30, 31, 32, 33, 34, 35 and 42 are drawn to the insulated contact finger illustrated in Figure 10. This group of claims stands rejected on the Cowper-Coles patent (U.S.) in view of Brockway. Cowper-Coles shows contact fingers which are apparently pivotally supported for contact with the wires \* \* \* while Brockway shows the expedient of insulating similar contact fingers. As the Examiner points out, the contact fingers \* \* \* of Brockway are surrounded by and obviously reciprocable in the insulating sleeve \* \*. In view of this arrangement no invention was found in providing an insulating sleeve for the contact fingers of Cowper-Coles loosely fitted therearound and reciprocable thereover. With this conclusion we are in agreement. The provision of means in claims 29, 31 and 32 for yieldably pressing the fingers in contact with the moving metal wires is considered a simple mechanical expedient where the need or desirability of extra pressure on the wires is found expedient. Nothing in the nature of a patentable limitation is found in any of these claims over what is disclosed in the references relied upon. The adjustable feature in claim 35 has been referred to above in connection with the previous rejection of this claim.

"Claims 33 and 41 define broadly the feature of making the carrier frame or supporting member for the cathode fingers vertically adjustable. We see no invention in this broad concept, it being considered uninventive to make parts adjustable, broadly, wherever desired. The diagonal disposition of the base of the jaw, as in claim 30, is considered a matter of mechanical design.

"Claim 53 stands rejected on the same ground as claim 42. The Examiner found no invention in pivotally mounting Brockway's finger electrode on the shaft \* \*, and we find none. The matter of pivotally mounting the finger depends upon the general type of finger assembly used and where the mounting is such as to require a pivot, as in the type of electrode shown in Cowper-Coles (U.S.), nothing involving the exercise of the inventive faculty would appear to be involved in supplying the necessary pivot."

The above quotations will serve to show how the tribunals below applied the references to the claims and we need not here enter into a detailed discussion as to the disclosures of the references other than to point out the particular feature of each of them that was relied upon in rejecting the claims.

Claim 19, which was drawn to cover the adjustment feature between the cathode contact fingers and the metal strands and the anodes, was, as appears from the above quotation, rejected upon the U.S. patent to Cowper-Coles in view of the British patent to the same patentee. The last referred-to patent shows a mutually adjusting anode and cathode but the cathodes there are not fingers, as is pointed out by the board. Cowper-Coles' U.S. patent, however, shows that it is old to use such fingers in this art.

■ We agree with the board that the group of claims, of which claim 19 is illustrative, is not patentable for the reasons stated by the board.

■ Claims 26, 27, 29, 30, 31, 32, 33, 34, 35 and 42 relate to insulated contact fingers. Appellant states that the gist of the sub-

ject matter covered by claim 26, which is also representative of this group, is the provision of a "loosely fitting ceramic insulator," which insulator covers the finger member reciprocably. The board and the examiner pointed out that the contact rods were insulated in the Cowper-Coles U.S. patent and these claims were rejected on the Cowper-Coles patent (U.S.) in view of Brockway. Brockway shows an electroplating process which includes a cathode plunger or finger which bears on the wire passing through the bath of electrolyte and which is surrounded by a loosely fitting insulating sleeve.

As to the first group of claims relating to the relative adjustability between certain features of appellant's device, in addition to rejecting them upon the prior art, the board was of the opinion that no invention was found in merely adjusting or making adjustable parts wherever desired. The tribunals below stated that there was no invention in pivotally mounting Brockway's finger electrode on his shaft and that no invention was involved in supplying the necessary pivot.

One point of dispute between appellant and the Patent Office emphasized here is that appellant challenges the holding of the board that the cathode fingers in the Cowper-Coles U.S. patent are shown to be "apparently pivotally supported for contact with the wire." Appellant urges that the patent does not disclose that there is such a pivotal mounting and that in the very nature of that patent it would not be pivotally mounted to perform the function intended. This argument is countered by the Solicitor for the Patent Office by pointing out that "each of the fingers * * * is provided at its upper end with a loop through which passes the rod which supports the finger. This will result in a pivotal mounting of the finger on the rod unless the loop is secured in position, and the patent contains no suggestion of such securing. It is obviously desirable that the fingers * * * should be flexibly mounted, not only to enable them to follow any irregularities in the wires, but also to allow them to remain in contact with the wires as the end of the rod wears down due to its constant rubbing against the moving wire.

It is conventional practice, in cases in which a stationary member is to make constant electrical contact with a moving one, to mount the fixed member resiliently or pivotally to compensate for wear. For example, the brushes of motors and generators are ordinarily mounted in this manner. Under these circumstances, it is thought that any skilled worker in the art would assume that the loops at the ends of the fingers in the patent are free to turn about the rods.

"Moreover, the patent specification * * contains a clear indication that the fingers are pivotally mounted. It is there stated that:

" 'Electrical contact is made with the wires or the like at numerous points by metal contacts resting thereon.' [Italics added.]

"The statement that one object rests on another would naturally be understood as meaning that the latter bears the weight of the former. If, as alleged by the appellant, the fingers * * * were rigidly fixed in position and the wires merely passed in contact with them it would not be appropriate to say that the fingers rested on the wires.

" * * * the appellant advances a theory as to why the fingers * * * could not be pivotally mounted. This theory seems to be based on false premises. Thus the appellant states that when the frame * * * is oscillated the wires move laterally 'due to the urge of the contact fingers * * *.' Actually, the lateral movement of the wires is due to the movement of the rollers * * *."

Since this seems to be one of the chief questions in dispute we have quoted liberally from the argument of the Solicitor, and we do not find ourselves in disagreement with the Solicitor's contention in this respect and with the board's finding to the same effect.

We have carefully noted all the arguments submitted in appellant's elaborate briefs and have examined the accompanying drawings and data, which have been helpful to us in understanding the nature of the claimed invention (appellant's thoroughness is to be commended), but we

have not been convinced that the changes or modifications made over the prior art amount to invention. We think the board committed no error in affirming the action of the examiner in rejecting the appealed claims upon the hereinbefore stated grounds.

The decision of the Board of Appeals is affirmed.

Affirmed.